## PENMAC CORPORATION et al. v. FALCON PENCIL CORPORATION.

District Court, S. D. New York.

May 14, 1945.

Frederic P. Warfield, of New York City, for plaintiff.

Percy Freeman, of New York City, for defendant.

CONGER, District Judge.

On June 21, 1939, plaintiffs brought action against this defendant. The complaint alleged infringement by the defendant corporation of certain patents of the plaintiff Penmac Corporation. Plaintiff The Wahl Company was an exclusive licensee. The controversy was over certain automatic pencils. Plaintiffs also asked for a preliminary injunction to restrain the alleged infringement. The injunction was granted by Judge Leibell on July 25, 1939. The injunction order, however, was not signed until October 9, 1939. The application for the preliminary injunction was based upon the decision of Judge Woolsey of this Court in Penmac v. Esterbrook, 27 F.Supp. 86, in which the claims of two of the patents in issue in this case were held valid and infringed. The Penmac v. Esterbrook case was appealed to the Circuit Court for the Second Circuit and was reversed, 108 F.2d 695. The Court held that the two patents involved here should be narrowly construed and when thus construed there was no infringement.

Subsequently and on or about October, 1942, plaintiffs moved to dismiss the action without prejudice, as a result of which an Interlocutory Judgment was made and entered dismissing the complaint without prejudice and vacating and rendering void the said preliminary injunction heretofore issued. The said Interlocutory Judgment also contained this provision (Paragraph 3):

"That this action be referred to Philip C. Peck as Special Master of this Court to hear and report to this Court the amount of damages, if any, caused to the defendant

by the issuance of the preliminary injunction herein."

The Special Master entered upon his duties, has heard the evidence and has now rendered his report and Findings of Fact and Conclusions of Law. The Special Master has rendered a rather lengthy and detailed report. He finds against the defendant herein that the several claims of damage presented by the defendant should be rejected and that no award of damages caused by the issuance of the preliminary injunction should be made in favor of defendant against plaintiffs.

Defendant has interposed herein some 93 objections to the report of the Special Master and 104 objections to the Findings of Fact and Conclusions of Law of the Special Master.

This matter has been argued before me at length on at least three occasions. I first heard argument on the objections to the Special Master's report. I thereupon sent the matter back to the Special Master for him to prepare Findings of Fact and Conclusions of Law which he has now filed with me. I then had argument upon objections by the defendant to these Findings and Conclusions. Argument was had at length. I went over each Finding of Fact and Conclusion of Law and ruled upon practically all of the objections at the time of the argument.

This is one of those puzzling cases. I have spent a great deal of time on it and have gone over the objections, numerous as they were, with a great deal of care. I have come to the conclusion that I should confirm and adopt the report of the Special Master; that I should confirm and adopt the Findings of Fact and Conclusions of Law of the Special Master with several exceptions to which I shall refer later. I do not deem it necessary to go into the report of the Special Master with any great detail. His report takes up each of the items of damage specifically and disposes of them. I can't say that he is clearly wrong. At first blush, one would naturally suppose that if a business is stopped by an injunction and that thereupon and several years later the injunction were vacated that some damage would have occurred to the enjoined party. That is the matter which has given me considerable trouble and concern.

However, I have come to the conclusion that on the testimony, the Special Master could not arrive at any figure which he could justify legally by way of damages to this defendant. The matter is a bit confused because of several factors. There was a delay from the time that the Judge rendered his decision allowing a temporary injunction until the time when the injunction order was finally signed. The defendant charges the plaintiff with bad faith in this respect. While this was unfortunate I can't find any bad faith.

From a reading of the testimony it would appear that the defendant's damage or loss of business, if any, might very well have occurred prior to the date of the granting of the temporary injunction.

It clearly appears from the evidence that this was due to letters sent out by plaintiffs' attorney to customers of the defendant; warning letters giving notice of claim of infringement. This, no doubt, did seriously affect defendant's sales but it's something with which we are not concerned here. The starting of the action in June, 1939 undoubtedly affected defendant's business. This is particularly true of the claim of loss in connection with the future sales to the Utility Manufacturing Company of 250,000 pencils. This order was received on June 30, 1938. Only comparatively a small number of these pencils were actually delivered to Utility. The last sale was paid for by Utility on June 16, 1939, yet Harry A. Rankow, President of the defendant, claimed that the loss of the Utility business was due to the injunction. An examination of his testimony, however, indicates that the real loss of business was occasioned by letters written to customers of Utility by the plaintiff.

The testimony further showed that for the fiscal year ending April 30, 1939 the defendant had operated at a loss.

I have no doubt that defendant lost sales as a result of this injunction which was in effect for several years at least, but I confess that from a reading of the testimony produced by the plaintiffs, I am unable to fix any sum by way of damages which might be justified by the evidence. The burden of proof, of course, is on the defendant to show damage. His theories of damage must be those which are in accord with the law and are reasonable. Damages may not be presumed, inferred or conjectured.

I agree with the Special Master that "the entire record fails to sustain

claims of damage asserted by defendant. The evidence does not establish with reasonable assurance the fact that any ascertainable damages are the natural and probable result of the operation of the injunction itself, and the assessment of general damages in whole or in part as urged by defendant is not sanctioned by the express limitation of Paragraph 3 of the Interlocutory Judgment herein."

There are so many elements entering into the causes of defendant's loss of business that one cannot say with any degree of certainty just what damage was occasioned by any one of them. The three elements are as follows:

(a) Letters sent by plaintiffs or plaintiffs' attorney to customers of the warning of defendant of claimed infringement.

(b) The commencement of this action.

(c) Damage caused by the injunction itself.

I can't see how any one can allocate any particular damage to the latter item when one considers the alleged damage occasioned by the other two. It should be noted in this respect that defendant's business as reflected in its cash book and accounts receivable just before the injunction was issued (Ex.E) was as follows:

$$\begin{array}{ll} \text{April} & \$273.22 \\ \text{May} & 246.45 \\ \text{June} & 12.44 \end{array}$$

*Findings of Fact and Conclusions of Law Supplemental to the Special Master's Report .*

I agree in the main with the Special Master's Findings of Fact and Conclusions of Law.

There are several corrections and amendments, however, which I wish to make.

At the end of Finding 2, I would add thereto and make a part thereof the following:

"That defendant had a contract with Ingersoll Waterbury Co. of Waterbury, Connecticut, for the manufacture of the enjoined pencils, at a fixed price of 17 cents each shipped in bulk or 18½ cents each, if carded, ½ dozen to a card, and one card to a box; and that defendant had a contract for the sale of the pencils, and sold the pencils, at various prices, but the lowest price for which the pencils were sold was 30 cents per pencil, when sold in bulk and 31½ cents per pencil, when carded."

Finding of fact 14 on page 7, line 4, strike out the words "No sales occurred after August 1939" and insert in place thereof, "Defendant produced no record of any sales after August 1939."

Findings 16 and 17. I do not agree with the Special Master that the Waterbury Company made a gift to defendant of the parts referred to in Finding 15. The witness Rankow did state with reference to them: "They gave me those parts." An examination of the testimony, however, indicates that Waterbury and defendant closed out their business and severed relations and that part of the settlement was the return of these unused pencil parts. I do not think, however, that it makes any difference in the result here. I would, therefore, strike out from Finding 16 the words: "Rankow states (Rec p 104) that these parts were a gift from Waterbury to defendant in the settlement for defendant's claim for the delivery by Waterbury of 200,000 pencils (Exhibits I and J) (Rec pp 80, 105)," and insert the following: "Although Rankow states (Rec p 104) that these parts were given to defendant by Waterbury, it appears that these parts were a portion of the settlement of the claim for the delivery by Waterbury of 200,000 pencils."

Strike out the words on page 8 of Finding 16: "If Waterbury chose to present these pencil parts to defendant, it might well be they would place a high value on same in the final settlement (Rec p 103)," and on line 7 of page 8, insert the word "Delivery" for "gift."

In Finding 17, line 9, strike out the words "Waterbury's gift" and insert "of these parts."

I, therefore, adopt and confirm the Special Master's Report and also his Findings of Fact and Conclusions of Law.

■ The Special Master has asked for compensation herein in the sum of $1200, together with his disbursements of $18.28. My examination of the record herein indicates to me that the Master has given a great deal of time and much study of this matter. I am satisfied that the compensation asked for by him is fair and reasonable. I, therefore, allow the same.

■ I hold that the costs of the reference should be assessed against both plaintiffs and defendant; that each side should pay one-half of the cost of the reference. I make this ruling because of the fact that

after all the moving element which resulted in this reference was started by plaintiffs who obtained a temporary injunction to which it later turned out they were not entitled. By this I do not mean to intimate that plaintiffs were not justified in applying for the temporary injunction. I think they were in view of the decision of Judge Woolsey.

There is another element which causes me to hold this way and that is that the reference, as I gather from the papers submitted to me, was brought about and caused by the application of the plaintiffs to withdraw the suit and to have the complaint dismissed without prejudice.

The Court in granting this application apparently placed a condition thereon that this reference be had. Under the circumstances I feel it is only fair and equitable that the expenses of the reference should be borne equally by the parties even though defendant has been unsuccessful in showing any damage.

The Special Master's compensation as fixed by this Court and entered in the final judgment shall be paid within ten days after the entry of said final judgment; that portion so ordered to be paid by the defendant herein if not so paid in ten days shall be paid by the plaintiffs or by the Maryland Casualty Company, surety on the bond filed with the injunction.

In the event that the defendant shall not pay the portion so ordered to be paid it as aforesaid and in the event that the same shall be paid by the plaintiffs or the Maryland Casualty Company herein, such payment either by plaintiffs or the Maryland Casualty Company shall be included in plaintiffs' taxable cost against the defendant.

Settle order on notice.