**UNITED STATES of America Plaintiff**

**v.**

**Edsel TORRES GOMEZ Defendant.**

**No. CR. 98–072(PG).**

United States District Court,
D. Puerto Rico.

Aug. 3, 1999.

Mark A. Irish, Asst. U.S. Attorney, Hato Rey, PR, for Plaintiff.

William D. Matthewman, Esquire, Miami, FL, Peter Berkowitz, Esquire, San Juan, PR, Roberto Roldán–Burgos, Esquire, Río Piedras, PR, for Defendant.

### OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Defendant Edsel Torres Gómez was arrested on April 8, 1998 and charged with violations of 18 U.S.C. § 922(o) and 924(c)(1) and 21 U.S.C. §§ 841, 846, and 848. On April 21, 1998, a Grand Jury for the District of Puerto Rico rendered an indictment charging the defendant with violations of 21 U.S.C. §§ 841, 846, and 848. The Court was then informed on May 8, 1998 that this is a death penalty eligible case, while on June 9, 1998, United States Attorney Guillermo Gil sent a letter to defense counsel advising that the defendant was charged with an offense subject to the death penalty and requesting a written submission from the defense regarding the mitigating factors in this case by July 8, 1998. Subsequently, the Court ordered the United States to notify the Court and defense counsel on whether it intended to seek the death penalty against the defendant by July 31, 1998.

On July 15, 1998, the United States moved the Court to enlarge time to advise whether it would seek the death penalty, explaining that it was in the process of gathering evidence in order to make its recommendation to Attorney General Janet Reno. The United States also notified the Court that it had been advised by attorney Roberto Roldán that the defendant would not inform the United States regarding why the death penalty should not be sought until "learned counsel" had

been appointed pursuant to Local Rule 428 and 18 U.S.C. § 3005.

On several occasions (July 10, 1998; July 29, 1998; August 12, 1998, and September 16, 1998) the defendant moved for appointment of learned counsel. The Court denied said requests without prejudice.

On August 21, 1998, the United States filed another motion to enlarge its time to inform the Court whether or not it would seek the death penalty, noting that it received a copy of a letter from attorney Peter Berkowitz sent to Deputy Assistant Attorney General Kevin DiGregory outlining the mitigating factors why the death penalty should not be sought against the defendant. The motion filed by the United States citing Local Rule 428 moved the Court to further enlarge its time until October 20, 1998 in order to advise the Court and the parties on whether it would seek the death penalty.

On October 9, 1998, attorneys Peter Berkowitz and Roberto Roldán appeared before the Attorney General's death penalty review committee in Washington, D.C. in order to argue the mitigating factors why the death penalty should not be sought against the defendant. On October 15, 1998, the United States moved the Court for a third time to enlarge the time to inform the Court whether it would seek the death penalty, noting that counsel for the defense had appeared before the death penalty review committee.

On October 26, 1998, the United States filed its notice of intent to seek the death penalty against the defendant, notifying the Court and defense counsel that the defendant was charged with a violation of 18 U.S.C. § 924(j), a capital offense. The United States also advised the defendant of the factors that it intends to prove at trial which will justify a sentence of death.

On November 9, 1998, the Court appointed learned counsel William D. Matthewman on behalf of defendant Edsel Gómez Torres. Pending before the Court is defendant's motion to strike the death penalty (Dkt.# 118) and plaintiff's opposition to said motion. (Dkt.# 148).

## Discussion

 Defendant's motion rests upon the false premise that the period of time between the indictment and the administrative hearing at the Death Penalty Committee of the Department of Justice (hereinafter referred to as "DOJ") is a "critical stage" in the defense of the accused. A segment of the litigation process is critical "where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (citation omitted). "In *United States v. Wade,* [388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)], the Court determined that a pretrial proceeding is a 'critical stage' if 'the presence of . . . counsel is necessary to preserve the defendant's . . . right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself.' Pretrial proceedings are 'critical,' then, if the presence of counsel is essential 'to protect the fairness of the trial itself.'" *United States v. Ash,* 413 U.S. 300, 322, 93 S.Ct. 2568, 37 L.Ed.2d 619 (concurring opinion) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 239, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). These tests prevent this Court from hurriedly labeling a particular process or period as "critical."

 Among those stages in litigation that are indeed "critical" are: probable cause hearings, *Britt v. McKenney,* 529 F.2d 44, 46 (1976), *cert. denied* 429 U.S. 854, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); plea withdrawal hearings, *United States v. Crowley,* 529 F.2d 1066, 1069 (3rd Cir. 1976), *cert. denied* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820; supplementary jury instructions after deliberations are underway, *Curtis v. Duval,* 124 F.3d 1, 4 (1st Cir.1997); preliminary hearings, *Adams v. Illinois,* 405 U.S. 278, 279, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); pretrial identification

lineups, *Pennsylvania v. Ritchie*, 480 U.S. 39, 69, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *Moore v. Illinois*, 434 U.S. 220, 224, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); sentencing procedures, *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); voir dire in felony cases, *Gomez v. United States*, 490 U.S. 858, 859, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); negotiations leading to the capture of a potentially dangerous person, *Estelle v. Smith*, 451 U.S. 454, 470, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (concurring opinion); arraignments, interrogations, and any other government efforts to obtain incriminatory information from the accused; *Michigan v. Jackson*, 475 U.S. 625, 629, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

■ Of course, not every stage in a criminal prosecution is "critical." *E.g., Gerstein v. Pugh*, 420 U.S. 103, 122, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ("the probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel"); *Gilbert v. State of California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (preindictment taking of handwriting exemplars is not a critical stage); *United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ("systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like" does not require presence of counsel under the Sixth Amendment because said samples are not part of a critical stage); *15,844 Welfare Recipients v. King*, 474 F.Supp. 1374, 1387 (noncustodial interview is not critical and does not trigger a Miranda right to counsel); *United States v. DeRosa*, 438 F.Supp. 548, 551 (D.Mass.1977) (appearance before a grand jury is not necessarily a critical stage),

aff'd *United States v. DeRosa*, 582 F.2d 1269 (1st Cir.1978).

The question, then, is whether the fact that defendant did not have learned counsel[1] during the administrative hearing at the Death Penalty Committee of the DOJ shall adversely affect in any way the fairness of defendant's future trial. The answer is clearly no. This case has not been scheduled for a definite trial date. Since learned counsel has been appointed since November 9, 1998, it is simply inconceivable how has the fairness of defendant's future trial been affected in any way. Defendant seems to confuse the trial with the sentencing stage. Defendant shall enjoy the assistance of learned counsel during the trial, and not one single evidentiary ruling has been made as of this day with regard to said trial, or with regard to the actual proceeding that shall occur during the trial. In any event, even if defendant's now-appointed learned counsel feels that the DOJ hearing was unfair in any manner, he is free to request, as defendant acknowledges, a reconsideration expressing new mitigating factors or evidence that may alter the Attorney General's decision allowing the prosecutors to seek the death penalty in the case at bar.[2] *See United States Attorneys' Manual 9–10.000(H).*

■ *United States v. Pena–Gonzalez*, 62 F.Supp. 358 (D.P.R. 1999) held, based upon *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), "that a capital punishment certification hearing is a 'critical' stage of a criminal proceeding where the 'substantial rights of a criminal accused may be affected.'" (quoting *Mempa, supra*, at 134, 88 S.Ct. 254). The *Pena–Gonzalez's* Court holding, however,

---

1. During the DOJ's hearing, defendant was represented by counsel, albeit not *learned* counsel.

2. Defendant's argues that he has suffered "irreparable harm" because while the Attorney General approves seeking the death penalty in one out of five cases, she permits withdrawal of her prior decisions in about only one out of

ten cases. These statistics do not necessarily imply that the Attorney General is more reluctant to withdraw her prior decisions than to make them in the first place, but rather that it is more often than not that defendants fail to present any persuasive evidence to the DOJ that would justify a reversal of the prior course of action taken.

is mistaken on two grounds. First, *Mempa* held that the sentencing stage is critical, not that an administrative hearing is critical. Thus, the *Mempa* Court concluded that the sentencing stage inevitably invokes the Sixth Amendment's right to counsel. Obviously, the actual sentencing, presided by an Article III judge, is not the same thing as an administrative hearing, presided by a committee in which the Attorney General has delegated functions which are intrinsically discretionary in nature as to what sentence the prosecutor shall be allowed to seek at any particular case.[3] Therefore, the string of cases cited in *Pena Gonzalez* with regard to Sixth–Amendment–right–to–counsel are inapplicable to case at bar because they rest upon the unsustainable premise that the DOJ's death penalty hearing is a critical stage.[4]

■ Second, the holding in *Pena–Gonzalez* fails to adequately explain how an administrative and discretionary hearing affects "substantial rights of a criminal accused." The accused neither obtains nor possesses any rights at the DOJ's Death Penalty Committee hearing:

> It has been found that the [Attorney General's] Protocol "does not create substantive or procedural rights." *United States v. Roman,* 931 F.Supp. 960, 964 (D.R.I.1996). Rather, "[t]he protocol articulates internal administrative procedures to be followed by DOJ personnel...." *Id.* It "provides for 'standards for determination' to guide the death penalty decision making process." *Id.* (citing DOJ Manual, S 9–10.000G). Accord: *United States v. McVeigh,* 944 F.Supp. 1478, 1483 (D.Colo.1996) ("the

decision to seek the death penalty under the Act is a matter of prosecutorial discretion [and][t]he Protocol [does] not create any individual right or entitlement....."); *United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir.1990), *cert. denied,* 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990) ("the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party") (citations omitted); *United States v. Loften,* 518 F.Supp. 839, 856 (S.D.N.Y.1981), *aff'd,* 819 F.2d 1130 (2d Cir.1987) ("internal Government policies do not create rights in private citizens. The United States Attorney's Manual itself specifically states that it is not intended to, does not, and may not be relied upon to, create any rights whatever in any party").

*United States v. Feliciano,* 998 F.Supp. 166, 169 (D.Conn.1998). Moreover, "[a]lthough we would normally expect the government to give a defendant pre-trial notice of possible sentence enhancement, we hold that there is no statutory requirement that it do so." *United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir.1990), *cert. denied* 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990).

Cases supporting the right to counsel in pre- and post-trial situations, *e.g., Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (psychiatric evaluation); *McConnell v. Rhay,* 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (revocation of probation proceedings); *Arsenault v. Com. of Massachusetts,* 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (preliminary hearings); *Douglas v. California,* 372 U.S.

---

**3.** The Court in *Pena–Gonzalez* states that "[t]he hearing can literally lead to a determination of life or death." Such assertion is unfocused and misguided. The hearing can only lead to whether the prosecutor shall be allowed to seek the death penalty in any given case. It is the jury, not an administrative committee, that determines whether the accused shall be put to death or not.

**4.** The fact that the DOJ guidelines provide for the optional appearance of counsel on the accused's behalf does not in any way imply that a death penalty certification hearing without counsel would be unconstitutional. *E.g., United States v. McVeigh,* 944 F.Supp. 1478, 1483 (D.Colo.1996) (the fact that defendant's counsel failed to appear to the certification hearing does not constitute grounds for striking the death penalty).

353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (appeal); *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (arraignments); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (arraignments) are all related to judicially reviewable proceedings. The DOJ's Death Penalty Committee hearing, on the other hand, is not judicially reviewable. A judicial review of such a hearing would implicate undue intermeddling with the prosecutor's discretion to determine what sentence to seek and with the executive branch's prerogatives. "[T]he only grounds warranting judicial interdiction of such action by an officer of the executive branch of government" are "discriminatory motive, invidious classification or improper motivation" as to the defendant, *United States v. McVeigh*, 944 F.Supp. 1478, 1484 (D.Colo.1996), none of which have been alleged by the defendant.[5]

In the case at bar, defendant has been represented by counsel at least since early in the summer of 1998. This Court refused to grant defendant's request for learned counsel prior to the death penalty certification hearing, yet it did concede defendant's petition promptly once the Attorney General granted permission to seek the death penalty in defendant's case. Defendant argues that the Court's denials to provide learned counsel prior to the death penalty certification hearing violated 18 U.S.C. § 3005, as amended by § 60026 of the 1994 Act, which states:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and

the court before which the defendant is to be tried, or a judge thereof, shall *promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases,* and who shall have free access to the accused at all reasonable hours. In assigning counsel under this section, the court shall consider the recommendation of the Federal Public Defender organization, or, if no such organization exists in the district, of the Administrative Office of the United States Courts. The defendant shall be allowed, in his defense to make any proof that he can produce by lawful witnesses, and shall have the like process of the court to compel his witnesses to appear at his trial, as is usually granted to compel witnesses to appear on behalf of the prosecution.

(Emphasis added).

The word "promptly" in 18 U.S.C. § 3005 was inserted into the statute in place of "immediately," the word previously chosen by legislators. *See* P.L. 103–322, Sec. 60026. Such change reflects a legislative intent to avoid the waste of judicial resources in potential death penalty cases that never materialize.[6] Pursuant to said motive, defendant's request for learned counsel must be heeded to only when he actually needs to have one. Once the Attorney General has granted permission to the prosecutor to pursue the death penalty, then the Court must act promptly upon defendant's request for learned counsel. Any act to appoint learned counsel

---

**5.** *Pena–Gonzalez* also attempts to equate death penalty certification hearings to adult certification hearings on the basis that both are "not to adjudicate guilt, but rather to determine the interests of the defendant and society." The hearing to determine whether a juvenile ought to be treated as an adult is subject to a statutory framework that dictates its proceedings, namely 18 U.S.C. § 5032; the death penalty certification hearing, on the other hand, is guided by an administrative protocol that offers guidelines without conferring any statutory rights upon the defendant.

**6.** Learned counsel, as it is well known, are not cheap. In the District of Puerto Rico alone, between 1995 and 1999, the Clerk Office's records reveal expenses of over one and a half million dollars to cover learned counsel fees. In one case in particular, for example, learned counsel charged $214,301.90 for expenses incurred prior to the death certification hearing, which ended up refusing permission to seek the death penalty. Hence, $214,301.90 were spent on a death-penalty specialist for a case where the death penalty was never sought at a trial.

prior to the Attorney General's permission would be premature.. This Court acted within fifteen days that the notice of intent to seek the death penalty was filed. A delay of just over two weeks to appoint learned counsel does not constitute a sufficient basis to strike the death penalty.[7]

Mr. Berkowitz asserts that he was unable to provide proper representation at the death penalty certification hearing because he had reserved his best arguments for rebuttal, and that having lost his right to rebuttal due to the fact that the government remained silent, the committee failed to take into account important mitigating factors. Bad lawyering ought not be confused with the need for expertise. Any competent counsel, not just counsel learned on death penalty litigation, knows that the best arguments are not saved for rebuttal, since the opportunity to rebut is dependent on whether the opponent chooses to speak or not.

Wherefore, since the government has complied with 21 U.S.C. § 848(h)(1), 18 U.S.C. § 3005 and any other constitutional requirements, the defendant's motion to strike the death penalty (Dkt.# 118) is hereby **DENIED.**

**IT IS SO ORDERED.**

---

7. Even assuming, *arguendo*, that the Court has failed to comply with § 3005, the same has been a harmless error, since defendant already has learned counsel, well before trial, and is free to rely on his assistance for a reconsideration hearing before the DOJ's Death Penalty Committee.