UNITED STATES

v.

**PEREZ et al.**

**No. 3:02CR7 (JBA).**

United States District Court,
D. Connecticut.

Aug. 2, 2002.

Richard A. Reeve, Michael O. Sheehan, Sheehan & Reeve, New Haven, CT, for Wilfredo Perez.

William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Norman A. Pattis, Williams & Pattis, New Haven, CT, Diane Polan, New Haven, CT, for Jose Antonio Perez.

Michael Dolan, O'Donnell, Riley, Iassogna & Dolan, New Haven, CT, Noah Lipman, New York City, Dan E. LaBelle, Halloran & Sage, Westport, CT, for Santago Feliciano.

James A. Wade, Craig A. Raabe, Robinson & Cole, Hartford, CT, Robert M. Casale, Branford, CT, Shelley R. Sadin, Zeldes, Needle & Cooper, Bridgeport, CT, for Fausto Gonzalez.

Jeremiah F. Donovan, Old Saybrook, CT, Auden Grogins, Fairfield, CT, for Raymond Pina.

David A. Ring, U.S. Attorney's Office, Hartford, CT, Peter D. Markle, John A. Danaher, III, Shawn J. Chen, U.S. Attorney's Office, new Haven, CT, for U.S.

### Ruling on Motion for Early Discovery [Doc. # 96]

ARTERTON, District Judge.

Defendant Fausto Gonzalez has been charged with capital crimes and faces a possible sentence of death if convicted. In a motion subsequently adopted by other defendants in this prosecution, Gonzalez asks the Court to order the Government to produce eighteen specific categories of material relating to mitigating and aggravating factors that will be at issue at any future penalty phase. Gonzalez[1] argues that this material is necessary to allow his attorney to adequately represent him before the Capital Case Committee estab-

---

1. For clarity, the Court refers throughout this memorandum to "Gonzalez" or "defendant," although, as set out above, the motion has been adopted by other defendants.

lished by the U.S. Attorney's office pursuant to an internal Department of Justice memorandum setting out the procedure used by the Government when deciding whether to actually seek the death penalty.[2]

As set out below, the Court concludes that inasmuch as this case is currently a capital case because Gonzalez is presently subject to a possible sentence of death, materials relating to aggravating and mitigating circumstances are within the scope of the Government's obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such materials are thus subject to immediate disclosure under the District of Connecticut's Standing Order on Pretrial Discovery, which is issued pursuant to the Court's inherent authority to manage its docket and supervise the orderly disposition of criminal matters. Defendant's motion is granted insofar as it seeks disclosures mandated by the Standing Order, with exceptions set out more fully below.

## I. Background

Gonzalez has been charged with death-eligible offenses, and the Government is currently determining whether it will file a notice of intent to seek the death penalty. *See* 18 U.S.C. § 3593(a). Pursuant to internal DOJ policies, Gonzalez's attorneys have been invited to "present any argument that they believe may be relevant to the issue of capital punishment," including "the defendant's view of the circumstances surrounding the offense insofar as those circumstances militate against the death penalty; [ ] the defendant's view as to whether any aggravating factors that might arguably apply are inapplicable; and [ ] the defendant's view as to whether there are any statutory or non-statutory

mitigating circumstances that the committee should consider." Letter from AUSA Ring to Defense Counsel (March 11, 2002) [Doc. # 113 Ex. D].

In preparation for this presentation, Gonzalez's attorneys have requested eighteen specific categories of information from the Government:

A. All evidence relating to the involvement in the crime of other persons against whom the Government is not seeking the death penalty.

B. All evidence of the victim's participation in the activities of a rival gang.

C. All evidence relating to the commission of any death-eligible offense in furtherance of the racketeering enterprise, criminal enterprise or drug conspiracy alleged in the Indictment by any co-conspirator or co-defendant against whom the Government has decided not to seek the death penalty.

D. Evidence relating to the race of those persons against whom the death penalty has been sought in this matter.

E. Evidence relating to the race of those persons against whom the Government could have but did not seek the death penalty in this matter.

F. All tangible evidence which the Government plans to use at any penalty phase or which is material to the defense of any penalty phase.

G. Forensic evidence which the Government intends to offer in its case in chief at the guilt or penalty phase.

**2.** For a description of the DOJ protocol, see *United States v. Shakir,* 113 F.Supp.2d 1182, 1184–1185 (M.D.Tenn.2000).

H. Names, addresses, backgrounds and criminal histories of all witnesses the Government intends to call at its penalty phase.

I. Identification of the aggravating factors the Government is now considering in making its assessment of whether to seek the death penalty or which it plans to offer in support of the death penalty during the penalty phase.

J. All information tending to undermine the application of any aggravating factors.

K. Identification of the information and factors considered by the Government in deciding that the case should be prosecuted as a federal crime.

L. The identities, addresses and criminal histories (and "other records reflecting on the credibility") of all witnesses the Government intends to call at either the guilt or penalty phase of the trial.

M. Information within the scope of *Giglio* and *Napue* regarding payments or promises of immunity or other preferential treatment or benefit made to prospective Government witnesses.

N. All witness statements within the scope of *Brady*.

O. All *Brady* information which may be favorable to Gonzalez in either the guilt or penalty phase.

P. Line-up or other identification processes used to identify Gonzalez, including biographical data on the persons shown in each spread.

Q. All information relating to other crimes, wrongs or acts of Gonzalez that may be offered at either the guilt or penalty phase.

R. Portions of the Lopez presentence report that contain *Brady* material.

It is undisputed that the Government has provided significant material already, including material encompassed by the above requests, although no party specifically organizes into these categories what has already been provided. Similarly, the Government nowhere lists its specific, line-by-line objections to these discovery requests, instead relying on general areas of objection. In particular, the Government objects to disclosing:

1. "records from unadjudicated homicide cases in New York" (covered by requests F & J);

2. "information regarding others who were *potentially* involved in the charged offense," specifically noting that "[t]he vast bulk of this information—if not the entire universe—would be witness statements" (covered by request A);

3. disclosure and interpretation, under request I, of "all of the government's evidence in this case and other cases in New York," which the Government asserts will include "the substantive equivalent of internal memoranda"; and

4. witness statements encompassed by request N.

The Court assumes that the Government's key objections are to disclosing the statements of cooperating witnesses, disclosing information about on-going homicide investigations in New York, and disclosing internal memoranda.

## II. Discussion

### A. *Brady*

"The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *In re United States (U.S. v. Coppa)*, 267 F.3d 132, 139 (2d Cir.2001) ("*Coppa*") (*citing Brady v.*

*Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). "Although the Government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's duty ... is ultimately defined ... by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial." *Id.* at 140 (*citing, inter alia, Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)) ("[S]trictly speaking, there is never a real '*Brady* violation' unless the [Government's] nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."). Under this retrospective regime, a *Brady* violation is established when: "(1) the Government, either wilfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *Id.* (*citing Strickler,* 527 U.S. at 281–282, 119 S.Ct. 1936).

The scope of the Government's *Brady* obligations, far from being static, can change during the course of the prosecution: "the *extent* of the disclosure required by *Brady* [is] dependant on the anticipated *remedy* for violation of the obligation to disclose." *Id.* at 142 (emphasis in original). Thus, if the Government ultimately decides not to seek the death penalty, or if other circumstances preclude

imposition of the death penalty (such as, for example, a jury verdict of Not Guilty on all death-eligible offenses), failure to disclose evidence that mitigates against imposition of the death penalty would not be a *Brady* violation because there would be no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).[3] If, however, this is a death penalty prosecution, the Government's *Brady* obligations include disclosure of, *inter alia,* mitigating evidence, because if the Government discloses no mitigating evidence and a death sentence is imposed, there is a reasonable probability that the jury would have reached a different conclusion. Critically, the Government concedes as much. *See* Govt's Response [Doc. # 113] at 13 n. 5 ("The United States concedes that its *Brady* obligations would change if it filed [ ] notice [of] its intent to seek the death penalty.") (*citing United States v. Beckford,* 962 F.Supp. 804 (E.D.Va.1997)).[4]

An essential dispute between the parties is whether this case is *now* a death penalty prosecution (thus concededly making some of the discovery requests *Brady* material immediately) or whether this case becomes a death penalty prosecution only upon the Government's filing of a notice of intent to seek the death penalty. While case law can be found that *sub silentio* supports either conclusion,[5] the structure

---

3. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

4. *Beckford,* cited by the Government, held that at the pretrial stage of a death penalty prosecution, defendants who establish a "substantial basis" for claiming that a mitigating factor will apply at the penalty phase are entitled to that evidence under *Brady.* 962 F.Supp. at 811 (*citing U.S. v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

5. *Compare U.S. v. Feliciano,* 998 F.Supp. 166, 170 (D.Conn.1998) (a death-eligible case where no notice of intent to seek the death penalty had yet been filed) ("Defendants are clearly entitled to discovery of mitigating evidence under [*Brady* ].") *with U.S. v. Torres Gomez,* 62 F.Supp.2d 402 (D.P.R.1999) (18 U.S.C. § 3005's requirement of two appointed counsel in "capital cases" is not triggered until the Attorney General grants permission for the prosecutor to pursue the death penalty; this avoids "the waste of judicial re-

of the federal statutes, the practice in this District and an analysis of *Brady* materiality all lead to the conclusion that this case is a death penalty case until the Government informs the Court otherwise.

The Federal Death Penalty Act, 18 U.S.C. § 3591 *et seq.*, requires notice by the Government if it intends to seek the death penalty. 18 U.S.C. § 3593(a). This notice is a prerequisite to a sentence of death. *See* 18 U.S.C. § 3593(b) (a death penalty sentencing hearing may only be held "[i]f the attorney for the government has filed a notice as required under subsection (a)"). The Government argues that until this notice is filed, its *Brady* obligations do not include evidence related to a possible sentence of death. However, the selection of this specific event—the filing of the notice under § 3593(a)—as the turning point seems rather arbitrary, inasmuch as any number of factors could result in no sentence of death being imposed: a key piece of evidence could be suppressed, the defendant could enter into a plea agreement, the Government could fail to meet its burden of proof at the guilt portion of the trial. In short, any number of eventualities could make penalty-related evidence immaterial to the outcome of the proceeding. Further, even if the Government seeks the death penalty, Gonzalez is convicted of a death-eligible offense, and an appropriate aggravating circumstance is unanimously found, the jury could still

decline to return a sentence of death. *See* 18 U.S.C. § 3593(e) ("the jury ... shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death"); *see also McCleskey v. Kemp*, 481 U.S. 279, 304, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) ("In contrast to the carefully defined standards that must narrow a sentencer's discretion to impose the death sentence, the Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to decline to impose the death sentence."). This represents another eventuality in which the Government's failure to disclose penalty-related information would not ultimately result in a *Brady* violation.

Despite these possible eventualities, which undoubtedly include the possibility that the Government will not file a § 3593(a) notice, the defendant presently stands accused of a capital crime and faces a possible sentence of death. Accordingly, he has been afforded the benefit of procedural devices that are specific to capital crimes, including provision of special counsel,[6] higher rates of reimbursement for counsel,[7] no statutory maximum on the compensation of counsel,[8] and different

sources in *potential* death penalty cases that never materialize") (emphasis added).

**6.** 18 U.S.C. § 3005 ("Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases, and who shall have free access to the accused at all reasonable hours."). Additionally, under 21 U.S.C. § 848(q)(4), more than two attorneys

may be appointed in a death penalty case if such additional attorneys are necessary for adequate representation; judges in this District have appointed up to three attorneys for death penalty defendants, *see U.S. v. Estrada*, 3:00cr227(SRU) (defendant Isaias Soler was appointed three attorneys prior to the Government's decision not to seek the death penalty).

**7.** 21 U.S.C. § 848(q)(10)(A).

**8.** *Compare* 18 U.S.C. § 3006A(d)(2) *with* 21 U.S.C. § 848(q)(10).

procedures for computing the compensation of expert witnesses.[9]

Interpreting this and other provisions specific to capital prosecutions (*e.g.*, the allowance in Fed.R.Crim.P. 24(b) of twenty peremptory challenges in death penalty cases), courts have held that proceedings are "capital" as long as the death penalty is a *possible* sentence. *See U.S. v. Martinez*, 536 F.2d 886 (9th Cir.1976) (defendants "were not facing the possibility of a death sentence in their jury trial" when "[a] stipulation and order was filed [stating that] the death penalty shall not be imposed"; thus, defendants were not entitled to special procedures applicable to capital crimes); *U.S. v. Shepherd*, 576 F.2d 719, 729 (7th Cir.1978) (defendant not entitled to two attorneys under 18 U.S.C. § 3005 when abolition of the federal death penalty left "no possibility that the death penalty can be imposed"; defendant was no longer indicted for a "capital crime"). *But see Torres Gomez, supra* note 5.[10]

These proceedings are capital proceedings, as Gonzalez currently faces a possible sentence of death. Gonzalez will remain subject to the death penalty until the Government indicates that it will not seek the death penalty, the time for filing such a notice passes, or other events eliminate the issue. Gonzalez has accordingly been afforded all special procedural protections provided by law for persons facing the death penalty.

The court in *U.S. v. Roman*, 931 F.Supp. 960 (D.R.I.1996), cited by the Government, determined that pre-notice requests for evidence related to a possible sentence of death are premature, thus implicitly concluding that they are not *Brady* material.[11] Unlike the case at bar, Roman had conceded at oral argument that the request was premature. Further, this Court views the *Roman* court's reading of § 3593(a)[12] as a misapprehension of the function of that statute. While the Government is required, as part of its notice, to list the aggravating factors, § 3593(a) does not purport to affect the timing or substance of *Brady* disclosures; it merely provides that when the Government files its notice, it must include the aggravating factors. For these reasons, the Court declines to adopt the *Roman* rationale here.

Given that Gonzalez is presently subject to a possible penalty of death, *Brady* requires that upon showing of a substantial basis for claiming that a mitigating or aggravating factor will apply during the penalty phase, Gonzalez must be given the opportunity to view evidence in the Government's possession that is material (in the *Brady* sense) to that factor. *Beckford*, 962 F.Supp. at 811; *Feliciano*, 998 F.Supp. at 170.

**9.** *Compare* 18 U.S.C. § 3006A(e)(3) *with* 21 U.S.C. § 848(q)(10)(B).

**10.** The Court respectfully disagrees with *Torres Gomez* because it fails to take into account that § 3005, by its express terms, is applicable to "[w]hoever is *indicted* for treason or other capital crime" (emphasis added).

**11.** "[A]t this stage of the proceedings [before the Government had indicated an intent to pursue the death penalty], Roman's motion [to compel the Government to reveal aggravating circumstances] is premature and may in fact become moot if the Government decides not to seek the death penalty." *Id.* at 963.

**12.** "Notice by the government—If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice * * * (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death...."

## B. Standing Order

The District of Connecticut's standing discovery order in criminal cases obligates the Government to turn over all *Brady* material within ten days of arraignment. *See* Standing Order on Pretrial Discovery (Appendix to D. Conn. L. Civ. R.) ¶ A(11) (Government must turn over "[a]ll information known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)."). The District's local rule requiring disclosure of Brady materials ten days after arraignment is not, as *Coppa* makes clear, constitutionally compelled. It is instead based on the Court's inherent power to manage its docket and provide for the orderly and timely disposition of cases.[13] *Coppa* specifically noted that "[t]his case presents no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management." 267 F.3d at 146. This broad power to regulate practice before the Court was explained in *United States v. Ming He*, 94 F.3d 782 (2d Cir.1996):

A federal court, guided by considerations of justice, may exercise its supervisory powers to formulate procedural rules not mandated by the Constitution. [O]ur authority to review procedures used in federal courts is not limited solely to ascertaining whether they are constitutionally valid. * * * It is our task to supervise the administration of justice in the federal courts, and to that end we must ensure that fair standards of procedure are maintained.

*Id.* at 792 (citations & internal quotations omitted).

Given the requirements of the Standing Order and absent any compelling reason (especially in light of the gravity of the penalty possible in this case) to modify those requirements by delaying the *Brady* and other disclosures provided for in the Standing Order until after any § 3593(a) notice is filed, the Court concludes that penalty-related information discoverable under the Standing Order is subject to immediate production.[14]

In light of the Government's assertion that disclosure of some requested informa-

---

**13.** *See Feliciano*, 998 F.Supp. at 169–170 (*citing, inter alia, Ming He; U.S. v. Rosado–Rosario*, No. 97–049, 1998 WL 28273 at * 1 (D.P.R. Jan.15, 1998); Fed.R.Crim.P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, [the criminal rules], and local rules of the district."); Advisory Committee Note to Fed.R.Crim.P. 16 (Rule 16 is "intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases."); *Beckford*, 962 F.Supp. at 755 ("numerous courts ... have recognized that the discovery provisions in Rules 12.2 and 16(b) are not exclusive and do not supplant a district court's inherent authority to order discovery outside the rules")).

**14.** Gonzalez does not claim that the protocol itself provides any enforceable right to discovery or disclosure, and contrary to the Government's assertion, ordering the discovery of *Brady* material at some point prior to the Government's decision to file a § 3593(a) notice does not require a conclusion that the protocol gives rise to any discovery rights. As set out above, the Court concludes only that penalty-related information is material in the *Brady* sense as long as the defendant faces a possible death sentence, and that under that Standing Order, *Brady* material is to be disclosed ten days after arraignment. Thus, *U.S. v. Boyd*, 931 F.Supp. 968 (D.R.I.1996) (rejecting a discovery request made under a theory that failure to disclose penalty-related information denied defendant right to counsel), *U.S. v. Shakir*, 113 F.Supp.2d 1182 (M.D.Tenn.2000) (concluding that court lacked jurisdiction *under the protocol* to authorize penalty related discovery); *U.S. v. Lee*, 274 F.3d 485 (8th Cir.2001) (protocol creates no substantive or procedural rights) and *U.S. v. Williams*, 181 F.Supp.2d 267, 299 (S.D.N.Y.2001) (same), are inapposite.

tion, including certain witness statements and reports of ongoing investigations, may hinder ongoing investigations or place witnesses in harm's way, the Court will entertain a properly-supported motion to modify the disclosures required by the Standing Order. *See* Standing Order ¶ (F) ("At the time of arraignment or upon motion promptly filed thereafter with supporting moving papers, the Court may, upon a showing of sufficient cause, order the discovery provided under this Standing Order be denied, restricted or deferred, or make such other order as appropriate.").

 Further, Gonzalez indicates that he does not seek Jencks Act[15] material, which has its own statutorily-mandated disclosure provisions, unless that material is also *Brady* material. *See* Def.'s Reply [Doc. # 119] at 12. Even so, *Brady* material is only *constitutionally required* to be disclosed in time for its effective use at trial or plea proceeding. *See Coppa*, 267 F.3d at 144 (*citing, inter alia, United States v. Romero*, 54 F.3d 56, 61 (2d Cir. 1995); *United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir.1990)). Given the express statutory temporal disclosure requirements of the Jencks Act, the Court does not have the inherent power to order the production of Jencks Act material prior to the time it is constitutionally required to be disclosed under *Brady* or statutorily required to be disclosed under the terms of the Jencks Act. *See id.* at 146; *In re*

*United States*, 834 F.2d 283, 286–287 (2d Cir.1987). Thus, the Court modifies the Standing Order and relieves the Government from disclosing material covered by the Jencks Act until that material is required to be disclosed under either *Brady* or the Jencks Act. *See* Standing Order ¶ (F).

## C. Remaining Issues

 The Government contends that certain information sought by Gonzalez is protected by a work product / deliberative process privilege. However, its objections in this regard are somewhat conclusory. *See* Govt's Response [Doc. # 113] at 16 ("[Request I] would require the government to *interpret* this evidence for the defendant. Thus, in essence, the defendant is asking for the government to provide him with the substantive equivalent of internal memoranda, which numerous courts have determined are not discoverable.") (emphasis in original). Insofar as requests I[16] & K[17] specifically ask the Government to share deliberations comprising part of the process by which governmental decisions are formulated, they are denied. *See U.S. v. Fernandez*, 231 F.3d 1240, 1246–1247 (9th Cir.2000) (discussing deliberative process privilege in this context); *U.S. v. Frank*, 8 F.Supp.2d 253 (S.D.N.Y.1998) ("Discovery of the deliberative materials would have a chilling effect on the thorough evaluation of these

---

**15.** "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of [subpoena], discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).

**16.** "Please identify the statutory and non-statutory aggravating factors the Government presently plans to offer in support of the death penalty in its penalty phase in chief and

which it is considering in making its assessment of whether to seek the death penalty against Mr. Gonzalez, and identify the information supporting those factors, including but not limited to all information relating to the claimed involvement of Mr. Gonzalez in alleged homicides in New York."

**17.** "Please identify the information and factors on which the Government based its decision that there is a more substantial interest in federal and opposed to state prosecution of the murder alleged in the Indictment."

issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty."); *see also* Fed.R.Crim.P. 16(a)(2). However, insofar as any of Gonzalez's requests seek only raw information such as documents in the Government's possession, the Government's work product objections are ineffectual, *see U.S. v. Furrow*, 100 F.Supp.2d 1170, 1177–1178 (C.D.Cal.2000) ("*Brady* may entitle defendant to production of the mental health and psychiatric records he refers to [but] *Brady* does not reach the prosecution's analysis of them"), given the absence of some more particularized objection with supporting basis by the Government.

Finally, Gonzalez's requests for race-related discovery (Requests D[18] & E[19]) must be denied, because Gonzalez has made no showing under *U.S. v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), that he is entitled to such discovery. *U.S. v. Bass*, — U.S. ——, 122 S.Ct. 2389, 153 L.Ed.2d 769 (2002) (district court erred in allowing discovery on race-disparity capital punishment issues when defendant "failed to submit relevant evidence that similarly situated individuals were treated differently"); *see also Feliciano*, 998 F.Supp. at 173–174.

III. Conclusion

For the reasons set out above, Gonzalez's Motion for Early Discovery [Doc. # 96] is GRANTED IN PART AND DENIED IN PART, as set out above. Within ten (10) business days of the date of this order, the Government will serve upon defendants:[20] (1) all material required to be disclosed by the Standing Order, including, as set out above, penalty-related information that is covered under *Brady*, except information as to which Government seeks a restriction or modification of the Standing Order or as to which the Court has modified the Standing Order pursuant to the Jencks Act; and (2) the Government's motion, if any, for a restriction or modification of the Standing Order.

---

**18.** "Any and all statistical or other data relating to the race of those persons against whom the death penalty has been sought by the Government in connection with this matter."

**19.** "Any and all statistical or other data relating to the race of those persons against whom the Government could have but did not seek an available death penalty in connection with this matter."

**20.** Inasmuch as the disclosures ordered are those required in the first instance by the Standing Order, which the Government has not as of yet moved to modify, the Government's obligations apply to all defendants in this action.