**UNITED STATES of America**

v.

**Jamal SHAKIR, Eben Payne, Donnell Young, et al.**

No. 3:98–00038.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 28, 2000.

Walker Casey Reed, Nashville, TN, Craig P. Fickling, Jr., Ronald Thurman & Associates, Cookeville, TN, Richard B. Mazer, San Francisco, CA, for Eben Payne.

William Henry Haile, Nashville, TN, for Alphonso Lewis.

Thomas L. Whiteside, Nashville, TN, for Milton Williams.

Deanna Bell Johnson, Spicer, Flynn & Rudstrom, Nashville, TN, Louisa McLean, Law Office of Barry O. Bernstein, Inc., Tarzana, CA, for Dwayne Belyeu.

Ronald W. McNutt , Mitch Grissim & Associates , Nashville, TN, for Vincent Harris.

Michael David Noel, Nashville, TN, for Greg Martin.

Martin G. Szeigis, Nashville, TN, for Brian Coleman.

Harold Shaw, Only, TN, pro se.

Roger E. Nell, Goble & Nell, PLLC, Clarksville, TN, for Harold Shaw.

Michael James Passino, Lassiter, Tidwell & Hildebrand, Nashville, TN, Natman Schaye, Schaye & Associates, Tucson, AZ, for Jamal Shakir.

Thomas F. Bloom, Nashville, TN, Richard Kammen , Indianapolis, IN, for Donnell Young.

William Taylor Ramsey, Neal & Harwell, Nashville, TN, for Lameisha Anderson.

Sabin R. Thompson, Williams & Prochaska, P.C., Nashville, TN, for Toni Tulloch.

Thomas J. Drake, Jr., Craig & Drake, Nashville, TN, for Lamont McLemore.

Dwight E. Scott, Nashville, TN, for Rennard Moore.

Julie Elizabeth Officer, Nashville, TN, for Langston Patterson.

Floyd Nolton Price, Dodson, Parker, Dinkins & Behm, P.C., Nashville, TN for Joseph Hamlin.

Michael H. Knowlton, Cookeville, TN, Joseph F. Edwards, Cookeville, TN, for Janice Kittrell.

Larry B. Hoover, Nashville, TN, for Richard Keesee.

Joseph L. Lackey, Jr., Lackey, Rodgers, Price & Snedeker, Nashville, TN, for Derrick Eatmon.

Charles S. Ramsey, Jr., Manchester, TN, for Charles Williams.

Jack Edward Seaman, Lyell, Eades, Seaman & Shelton, Nashville, TN, for Charles Thaxton.

Paul J. Bruno, Nashville, TN, for Marcus Randall.

Sunny A.M. Koshy, Office of the U.S. Attorney, Nashville, TN, for U.S.

*MEMORANDUM*

JOHN T. NIXON, District Judge.

Pending before the Court are three motions filed separately by defendants Eben Payne, Donnell Young, and Jamal Shakir. (Docs. No. 739, 865, 868.) The motions concern defendants' requests for what they term "pre-authorization discovery," namely, discovery which the defendants argue they need so that they can present mitigating evidence to the United States Attorney in accordance with the Department of Justice ("DOJ") "Death Penalty Protocol." The government has filed a Response in opposition to all motions. (Docs. No. 768, 905.)

Also pending is Defendant Donnell Young's Application to Review the Prosecution's Submission to the Department of Justice, (Doc. No. 742), to which the government has responded, (Doc. No. 769). On June 12, 2000, a hearing was held on all motions. (*See* Tr. June 12, 2000.)[1] For the reasons stated below, the Court hereby DENIES all motions.

## I. BACKGROUND

### A. The Department of Justice Death Penalty Protocol

On January 27, 1995, the DOJ issued what is commonly referred to as the "Death Penalty Protocol" (hereinafter the "Protocol"). The Protocol mandates the procedures to be followed in all federal cases in which a defendant is charged with an offense that may be subject to the death penalty. *See generally Department of Justice Manual,* § 9–10.000. The Protocol provides that the "death penalty shall not be sought without the prior written authorization of the Attorney General." *Id.* at § 9–10.000–A. Pursuant to the Protocol, the U.S. Attorney may submit to the Attorney General a recommendation as to whether the government should seek the death penalty in a particular case.

In all cases in which the U.S. Attorney intends to charge a defendant with an offense subject to the death penalty, regardless of whether the U.S. Attorney ultimately recommends the filing of a notice to seek the death penalty, the U.S. Attorney is required to prepare and submit to the Attorney General a "Death Penalty Evaluation" form and memorandum. The memorandum includes a comprehensive discussion of (1) the theory of liability; (2) the facts and evidence, including evidence relating to any aggravating or mitigating

1. The transcript from the June 12, 2000 hearing is docketed as Docket Number 919.

factors; (3) the defendant's background and criminal history; (4) the basis for federal prosecution; and (5) any other relevant information. *Id.* at § 9–10.000–C. As part of its submission to the Attorney General, the U.S. Attorney is also required to provide "any written material submitted by counsel for the defendant in opposition to the death penalty being imposed on the defendant . . . ." *Id.* As such, the Protocol states that, "the United States Attorney should give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, to the United States Attorney for consideration." *Id.* § 9–10.000–B.

The above-described information is then reviewed by a committee appointed by the Attorney General. *Id.* § 9–10.000–D. The Protocol provides that "counsel for the defendant shall be provided an opportunity to present to the Committee, orally or in writing, the reasons why the death penalty should not be sought." *Id.* The Committee will consider "all information presented to it, including any evidence of racial bias against the defendant or evidence that the Department has engaged in a pattern or practice of racial discrimination in the administration of the federal death penalty." *Id.* The Committee then gives its recommendation to the Attorney General, who in turn, conducts a review and makes the final decision as to whether the government should file a "Notice of Intention to Seek the Death Penalty." *Id.*

**2.** This prosecution commenced on March 26, 1998, when the government filed under seal a one-count indictment against Eben Payne. Since that date, the government has amended and superseded the indictment four times: on June 4, 1998; November 20, 1998; February 25, 1999; and most recently, on September 30, 1999.

**3.** The Court will use the term "pre-authorization discovery," as it is used by defendants, to refer to the discovery that the defendants argue they need in order to present mitigating evidence to the U.S. Attorney in accordance with the Protocol.

## B. Procedural Background

On September 30, 1999, defendants Payne, Shakir, and Young were indicted for multiple narcotics related offenses, including capital charges for continuing criminal enterprise murder and narcotics conspiracy murder.[2] The government has not, at this time, filed a notice indicating its intention to seek the death penalty against the three defendants as required by 18 U.S.C. § 3593(a).

On November 8, 1999, counsel for Defendant Donnell Young made an informal request to the government for pre-authorization discovery.[3] (Doc. No. 741, attachment.) On November 15, 1999, the government denied this request. (*Id.*) On November 29, 1999, Defendant Young filed a Motion for Pre-authorization Discovery. (Doc. No. 739.) In addition, Defendant Young filed an Application to Review the Prosecution's Submission to the Department of Justice, seeking to review the U.S. Attorney's anticipated memorandum and recommendation to the Attorney General regarding whether the government should seek the death penalty. (Doc. No. 742.)

Pursuant to the Protocol, the government wrote counsel for defendant Eben Payne in February, 2000, and for defendant Jamal Shakir in March, 2000, inviting counsel to submit any mitigating material that they desired the U.S. Attorney to consider in deciding whether to seek the death penalty.[4] (Docs. No. 869, ex. A; 865, ex. 2.) Defense counsel were informed

**4.** It is not clear from the parties' papers whether the government also invited defense counsel for Donnell Young to submit mitigating evidence in accordance with the Protocol because Defendant Young's Motion was filed in November, 1999, prior to the time when the government began inviting defense counsel to submit mitigating evidence. However, Defendant Young is charged with crimes that are subject to the death penalty and is seeking the same discovery as defendants Payne and Shakir seek. Thus, the Court will assume that he also was invited to submit mitigating evidence.

that they were free to provide such information either in writing or via an oral presentation. (*Id.*) It appears from the parties' papers that defense counsel for defendants Payne and Shakir informally requested that the government provide them with expanded discovery so that they may present evidence in mitigation in accordance with the Protocol. (Doc. No. 869, ex. B; 865, ex. 4.) The government denied these requests. (*Id.*) In late April, 2000, defendants Payne and Shakir filed separate motions for pre-authorization discovery.[5] (Docs. No. 865, 868.)

## II. ANALYSIS

Upon consideration of the parties' arguments and the applicable caselaw, the Court finds that it does not have jurisdiction to order pre-authorization discovery.

### 1. *The Court Cannot Interfere in a Matter of Executive Agency Discretion*

The defendants' argument in support of pre-authorization discovery turns entirely on the language of § 9–10.000–B of the Protocol, which states that "the United States Attorney should give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, to the United States Attorney for consideration." Defendants place great emphasis on the words "reasonable oppor-

tunity" in arguing that they must be given access to the requested information so that they may have a "reasonable opportunity" to present mitigating information to the government. (Doc. No. 866 at 2.) Defense counsel contend that they "cannot fulfill their obligations in a meaningful and constructive manner without first being provided information which only the government possesses." (Doc. No. 869 at 3.) Although defendants concede that the Protocol does not confer substantive or procedural rights on a defendant, (Doc. No. 866 at 3), they argue that "based on the fundamental and statutory rights ... at stake in the action before this Court," defendants must be allowed a meaningful opportunity to present mitigating evidence in opposition to a death penalty certification. (*Id.* at 2.)

There is a dearth of caselaw on the issue of pre-authorization. Moreover, it is one of first impression in this circuit. However, courts considering this issue have found almost uniformly that the Protocol does not create substantive or procedural rights. *Nichols v. Reno*, 931 F.Supp. 748, 751 (D.Colo.), *aff'd*, 124 F.3d 1376 (10th Cir.1997); *United States v. McVeigh*, 944 F.Supp. 1478, 1483–84 (D.Colo.1996); *United States v. Roman*, 931 F.Supp. 960, 964 (D.R.I.1996); *United States v. Feliciano*, 998 F.Supp. 166, 169 (D.Conn.1998),

---

**5.** The information which the defendants collectively seek to discover is voluminous, and includes but is not limited to:

(1) Impeachment information with regard to all anticipated government witnesses, including personal bias, prior false statements, prior criminal records, and information pertaining to cooperating witnesses whose credibility is in question due to plea bargains entered into in return for their testimony;

(2) Any reports contained in the files of the Oklahoma City, Los Angeles, Las Vegas, Nashville, and Memphis police departments, the FBI, and the DEA, regarding potential witnesses in this case, whether or not generated in connection with this case, including information that the homicide victims and any co-defendants were involved in criminal activities;

(3) All exculpatory information, and all information that is material or relevant to the participation, direct or indirect, of any person or persons involved in the alleged murders in any capacity;

(4) All mitigating evidence pertaining to the defendants, including evidence of character, conduct, and good deed at any time, evidence that the defendant suffers from a mental or emotional disturbance, and evidence demonstrating that the defendant comes from a background that might mitigate against the imposition of the death penalty;

(5) All evidence of other uncharged bad acts or crimes alleged to have been committed by a defendant which are relevant to the government's decision of whether to seek the death penalty;

Instead, the Protocol "articulates internal administrative procedures to be followed by DOJ personnel ...." *Id.* (*citing Department of Justice Manual*, § 9–10.000G); *accord McVeigh,* 944 F.Supp. at 1483 (holding that "the decision to seek the death penalty under the Act is a matter of prosecutorial discretion [and][t]he Protocol [does] not create any individual right or entitlement subject to ... due process protections ..."). The decision to seek the death penalty and the issuance of the Notice of Intent pursuant to the Protocol, are "essentially a prosecutor's charging decision." *McVeigh,* 944 F.Supp. at 1484. Such prosecutorial discretion to make charging decisions "has repeatedly and consistently been held to be presumptively unreviewable by the courts." *Nichols,* 931 F.Supp. at 751 (*citing Heckler v. Chaney,* 470 U.S. 821, 832, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)). Moreover, Congress, in passing 18 U.S.C. § 3593, did not dictate any restrictions or procedures regarding the process by which the government reaches its decision of whether to seek the death penalty, nor did Congress make any provisions for judicial review of such decision or for the defendant's participation in the certification process. 18 U.S.C. § 3593.

The DOJ Manual itself states that its content "provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." *Department of Justice Manual,* § 1–1.100. The Sixth Circuit, relying upon this language, has held that the Manual does not create any enforceable procedural or substantive rights in defendants. *United States v. Myers,* 123 F.3d 350, 355–56 (6th Cir.1997) (holding that a violation by the DOJ of its internal operating procedures, on its own, does not create an enforceable right); *accord United States v. Loften,* 518 F.Supp. 839, 857 (S.D.N.Y.1981), *aff'd,* 819 F.2d 1130 (2d Cir.1987) (holding, in the context of government's alleged non-compliance with the Manual, that "internal Government policies do not create rights in private citizens"). Furthermore, courts have held in contexts other than those involving the Manual, that "the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party." *United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir.1990) (citations omitted) (government's alleged violation of its Handbook on the Comprehensive Crime Control Act of 1984); *see also United States v. Tipton,* 11 F.3d 602, 612 (6th Cir.1993) (government's alleged violation of Petite policy). Accordingly, the Court finds that the Protocol does not create any enforceable substantive or procedural rights in the defendants, and that the DOJ's interpretation of its internal policy, prohibiting the disclosure of pre-authorization discovery, is a matter of prosecutorial discretion which is presumptively unreviewable by this Court.

The Court notes that the defendants rely upon two cases from the district of Puerto Rico issued by the same district court judge in support of their statement that "[s]everal courts have ordered pre-authorization discovery." (Doc. No. 740 at 3) (emphasis added) (*citing United States v. Rosado–Rosario,* 1998 WL 28273 (D.Puerto Rico 1998), and *United States v. Pena–Gonzalez,* 62 F.Supp.2d 358 (D.Puerto Rico 1999)). Initially, it is important to note that in *Rosado–Rosario,* the government "*agreed* ... [to] provide early disclosure of Jencks, Brady, Giglio, and Agurs material ...." *Rosado–Rosario,* 1998 WL 28273 at *1 (emphasis added). Subsequently, the government refused to fully disclose such material to defense counsel, at which point the court "ordered the government to provide the unredacted discovery material pursuant to the previous stipulation ..., or, alternatively, to desist from requesting authorization to seek the death penalty." *Id.* The government continued in its refusal to provide the agreed upon discovery, and then failed to file its notice

of intent to seek the death penalty within the time frame prescribed by local rule. *Id.* at *2. One month after the deadline prescribed by local rule passed, the U.S. Attorney filed an unauthorized notice of intent to seek the death penalty which had not been certified by the Attorney General. *Id.* The court held that the prosecution could not proceed as a capital case because the government failed to abide by the time requirements of the local rule and failed to comply with the court's order. *Id.* at *3. In addition, the court stated that it was enforcing the local rules in part to sanction the government for its "particularly deceiving and unacceptable" conduct of filing the unauthorized notice. *Id.* at *4. Thus, *Rosado–Rosario* is completely inapplicable to the instant case and certainly does not stand for the proposition that the defendants are entitled to pre-authorization discovery under the Protocol. Rather, the court in *Rosado–Rosario* was merely enforcing a discovery stipulation agreed to by all parties and exercising its power to enforce the local rules, specifically in part to sanction the government for its misconduct.

Similarly, the case of *Pena–Gonzalez* is inapplicable to the instant case. In *Pena–Gonzalez*, defendant's counsel failed to submit any mitigating evidence to the government pursuant to the Protocol or to represent him at the death penalty certification process. 62 F.Supp.2d at 359. The Attorney General subsequently certified that she would seek the death penalty against the defendant. *Id.* The defendant moved to strike the death penalty certification, arguing that his right to counsel and due process rights were violated because his counsel failed to represent him throughout the certification process. *Id.* In striking the certification, the court held

that "a capital punishment certification hearing is a 'critical' stage of a criminal proceeding where the 'substantial rights of a criminal accused may be affected.'" *Id.* at 363. Although it is unclear from their papers, presumably the defendants are arguing that because the death penalty certification process is a "critical stage" of a criminal proceeding, they are entitled to pre-authorization discovery. (*See* Docs. No. 740 at 3; 869 at 3) (citing *Pena–Gonzalez* but offering no further analysis). Nonetheless, the *Pena–Gonzalez* court's holding is incorrect on two grounds. First, the court found authority for its holding by analogizing the certification process to a sentencing hearing, *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (holding that a sentencing hearing is a critical stage), and to an adult certification hearing in which a court determines whether to try a juvenile as an adult. 62 F.Supp.2d at 363. However, both of these proceedings are judicial proceedings presided over by a judge, as opposed to the administrative, discretionary decision-making process of whether to seek the death penalty. Second, the court's analysis simply ignores the fact that a defendant does not possess any "substantial rights" in the discretionary decision-making process of an executive agency, as discussed above. *Accord United States v. Torres Gomez*, 62 F.Supp.2d 402 (D.Puerto Rico) (holding that the death penalty certification process is not a critical stage of litigation). Accordingly, *Pena–Gonzalez* offers no support for the defendants' position.

■ Accordingly, because the Court lacks jurisdiction to order pre-authorization discovery, the defendant's motions are hereby DENIED.[6]

---

**6.** As a final matter, the Court notes that the defendants, in support of their motion for pre-authorization discovery, point to other cases in which U.S. Attorneys have agreed to provide pre-authorization discovery. (Doc. No. 740 at 3; 865 at 9; Tr. at 4, 8, 10–11.) However, the fact that other U.S. Attorneys

have granted pre-authorization discovery simply bolsters the government's position that providing such expanded discovery is a matter of prosecutorial discretion, and is not an action the Court can compel. Moreover, Assistant U.S. Attorney Hilliard Hester stated at oral argument that the government is follow-

### 2. The Accardi Doctrine

■ Next, defendants argue that pursuant to *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954), and its progeny, this Court has authority to fashion remedies that require the DOJ to abide by its own Protocol. (Doc. No. 866 at 4–11.) In support of this argument, defendants rely on a district court case from Arkansas which they argue stands for the proposition that "a death-eligible defendant has a right under the *Accardi* doctrine to 'require the DOJ and the Attorney General to comply with [the] self-imposed and internal procedures found in the Death Penalty Protocol.'" (*Id.* at 4) (*quoting United States v. Lee*, 89 F.Supp.2d 1017, 1039 (E.D.Ark.2000)).

The Court finds that the *Accardi* Doctrine confers no authority on a court to order pre-authorization discovery. Both Defendant and the district court in *United States v. Lee*, which defendant relies upon, misconstrue the holding of the Supreme Court in *Accardi*. In *Lee*, the court read *Accardi* as standing for the proposition that "... an administrative agency must follow its own procedural rules if those rules will affect an individual's rights." *Lee*, at 1036. Relying upon *Lee*, Defendant argues that the Court should order the government to comply with its own procedural rules, by providing pre-authori-

zation discovery, because the rules affect the defendants' fundamental right to life. (Doc. No. 866 at 6–7.)

However, as the government argues, a close reading of *Accardi* reveals that only those internal agency regulations which affect rights granted by law are subject to limited judicial review. As the Supreme Court stated in *Accardi*, "[t]he crucial question is whether the alleged conduct of the Attorney General deprived petitioner of any of the rights *guaranteed him by the statute or by the regulations issued pursuant thereto.*" *Accardi*, 74 S.Ct. at 502 (emphasis added). Thus, the applicability of the *Accardi* doctrine depends upon a finding that the Protocol provides defendants with some protectable interest. However, as discussed above, the Protocol does not confer any enforceable rights on the defendants. Accordingly, the *Accardi* doctrine is inapplicable to this case.[7]

■ Even if the Court were to find that the *Accardi* doctrine should apply in this case, something that no other court except the *Lee* court has done, it is not apparent that the government is not presently following its own procedural rules. The government has represented that the Protocol does not on its face contemplate expanded discovery for defendants, and that it is DOJ policy to interpret the Protocol as denying expanded discovery.[8] (Doc. No. 768 at 6.) Accordingly, the government

---

ing DOJ policy in this case, and that to his knowledge, the AUSA's involved in the prosecutions cited by the defendants had mistakenly provided pre-authorization discovery in violation of DOJ policy. (Tr. at 22.)

**7.** Defendants assert that the Court may invoke the *Accardi* doctrine to protect what they term the "fundamental right to life." While it is true, as defendants argue, that courts have granted greater protections and safeguards to capital defendants in recognition of the fact that capital punishment is fundamentally different from any other form of criminal penalty, *see, e.g., Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), courts have done so with respect to proceedings over which a court has jurisdiction. By contrast, this Court has no authority

or jurisdiction over a discretionary decision made by an executive agency.

**8.** The government states that its position in opposition to the release of pre-authorization discovery in this case

> ... is stated following consultation with DOJ attorneys, and is consistent with DOJ interpretation of the DOJ protocol, which is as follows: The protocol describes a process that is strictly one-way, this is, *the defendant presents information to the Government*, not visa versa. The procedure contemplates the defendant advising the Government of facts and circumstances *unknown* to the Government.

(Doc. No. 905 at 4–5) (emphasis in the original).

represents that it is properly following its own procedural rules. (Tr. at 22.) For the Court to find otherwise would exceed the Court's jurisdiction. The Court is not free to re-interpret internal DOJ policy and impose that interpretation upon an executive agency. Such action would violate the constitutionally mandated separation of powers.[9] *See Walker*, 925 F.Supp. at 132 (finding that "generally, the [*Accardi*] doctrine ... is applied where agencies have disregarded or ignored their own informal procedures," not where the challenged actions were undertaken within the scope of prosecutorial discretion).

### 3. *The All Writs Act, 28 U.S.C. § 1651*

■ Defendants argue that under the All Writs Act, the Court has the power to fashion discovery procedures and orders that are necessary to effectuate and protect the exercise of its jurisdiction, including pre-authorization discovery. (Doc. No. 866 at 12.) In support of this argument, defendants cite *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), for the proposition that a court may rely upon the All Writs Act "in issuing orders appropriate to assist them in conducting factual inquiries." (*Id.* at 13) (*citing Nelson*, 394 U.S. at 299–300, 89 S.Ct. 1082).

■ The All Writs Act provides that: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (West 2000). A court may only issue writs that are "in aid of the issuing court's existing jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 119 S.Ct.

1538, 1542, 143 L.Ed.2d 720 (1999). The Act does not grant new jurisdiction or expand a court's jurisdiction otherwise provided or limited by law. *Id.*

Indeed, the defendants' reliance on *Harris v. Nelson* is completely misplaced. In *Harris*, petitioner, a state prisoner challenging his conviction, sought discovery in order to have an opportunity for a "fair and meaningful hearing." 394 U.S. at 289, 89 S.Ct. 1082. The Supreme Court held that in exercising its habeas jurisdiction, the district court could fashion such discovery procedures as it deemed necessary to ensure meaningful adjudication of claims. *Id.* at 300, 89 S.Ct. 1082. Thus, the district court's invocation of the All Writs Act was made only in furtherance of its already existing habeas jurisdiction. In this case, the Court lacks jurisdiction over the internal decision-making process of an executive agency. Accordingly, the defendants' argument that the Court may order pre-authorization discovery pursuant to the All Writs Act is without merit.

### 4. *Government's Alleged Non–Compliance with Standing Discovery Order*

Defendants emphasize that the information they presently seek is already subject to discovery pursuant to the Court's standing discovery order, Rule 16 of the Federal Rules of Criminal Procedure, or *Brady v. Maryland*. (*Id.*; Doc. No. 740 at 3.) In support of their motions for pre-authorization discovery, the defendants allege that the government has failed to provide discovery material, particularly *Brady* material, in accordance with the standing dis-

---

**9.** In addition, the government assures the Court that it recognizes the importance of making a balanced and objective presentation of both aggravating and mitigating circumstances to the Attorney General, and further states that it will approach this duty, not in the role of advocate, but rather as advisor. (Doc. No. 768 at 7.) The government states that it fully intends to discharge this duty, so that the DOJ's goal of consistent, fair, rational and objective decisions regarding whether to

seek the death penalty, may be achieved in this case. (*Id.*) Despite the fact that the defendants "question" whether the U.S. Attorney will make a fair presentation to the Attorney General, (*see, e.g.,* Tr. at 33–35), they have presented no evidence to support their suggestion that the government will not fulfill this duty. Absent such evidence, the Court has no reason to question the good faith representations of the government.

covery order. (*See* Doc. No. 869 at 4–5; Tr. at 7–8.)

The Court finds that the defendants' various allegations that the government has not complied with the standing discovery order and their arguments that they need *Brady* and *Giglio* material to prepare for both the trial and their presentations to the U.S. Attorney, are wholly irrelevant to the issue of whether the Court has the authority to order pre-authorization discovery.[10] Moreover, the government has stated that to its knowledge, it has complied fully with the discovery order. (Doc. No. 905 at 2, n.1.) Furthermore, the government agreed at the June 12, 2000 hearing to further investigate defense leads relating to possible *Brady* evidence.[11] Accordingly, this argument is without merit.

### 5. Defendants' Argument that the case be barred from proceeding as a capital case

■ Finally, the defendants argue that if the government refuses to provide pre-authorization discovery, the Court should bar this prosecution from proceeding as a capital case. (Doc. No. 866 at 11, 15.) Defendants base this argument on both *Rosado–Rosario* and *Pena–Gonzalez,* discussed earlier, in which the district court barred the government from trying the case as a capital case and forced it to proceed as a regular felony case. As discussed earlier, the court in *Rosado–Rosar-*

io acted pursuant to local rules, *cf. United States v. Acosta–Martinez,* 89 F.Supp.2d 173 (D.Puerto Rico 2000) (denying defendant's motion to bar prosecution from proceeding as capital case due to government's failure to comply with local rules), and with all due respect to the *Pena–Gonzalez* court, its decision was based upon flawed legal reasoning. In the instant case, the Court has no authority to interfere with internal DOJ policy governing the prosecutorial decision of whether to seek the death penalty.

### 6. Application to Review the Prosecution's Submission to the Department of Justice

■ Defendant Donnell Young requests permission to review the U.S. Attorney's submission to the Attorney General, including the death penalty evaluation form and memorandum prepared by the U.S. Attorney pursuant to § 9–10.000–C. (Doc. No. 742.) In support of his Application to Review, Defendant Young reiterates the same arguments advanced in support of the motion for pre-authorization discovery. Accordingly, for the same reasons set forth above with respect to the motion for pre-authorization discovery, the Application to Review is hereby DENIED.

### III. CONCLUSION

For the foregoing reasons, defendants' motions for pre-authorization discovery

---

**10.** For example, Defendant Young argues that "[i]n the event the government intends to call these individuals [two co-defendants who have pled guilty to murder] to testify against Mr. Young, counsel needs to know more than the parameters of the plea agreement. Counsel needs to know what the witness will say in order to demonstrate that the witnesses [sic] testimony is not credible." (Doc. No. 740 at 2.) The Court finds that Defendant Young's argument belies his stated purpose for seeking expanded discovery at this point, namely to assist counsel in presenting mitigating evidence to the Attorney General. While the Court recognizes the need of all defendants for pre-trial discovery, this issue is not properly addressed in the context of the instant motions for pre-authorization discovery.

**11.** During the June 12, 2000 hearing, counsel for Defendant Payne stated that despite a defense investigation revealing that law enforcement agencies in this case pursued avenues of investigation indicating that other individuals may have committed the crimes for which the defendant has been charged, the government has failed to turn over exculpatory evidence pursuant to its obligation under *Brady.* (Tr. at 16–18.) AUSA Hester responded that he was unaware of such information but indicated that the government would investigate the defense leads and provide any *Brady* material to the defendants. (Tr. at 18–19.)

and Defendant Young's Application to Review the Prosecution's Submission are hereby DENIED. An Order consistent with this Memorandum is filed contemporaneously.

It is so ORDERED.

### *ORDER*

Pending before the Court are three motions for pre-authorization discovery filed separately by defendants Eben Payne, Donnell Young, and Jamal Shakir. (Docs. No. 739, 865, 868.) Also pending is Defendant Donnell Young's Application to Review the Prosecution's Submission to the Department of Justice. (Doc. No. 742.)

For the reasons set forth in the accompanying Memorandum, the defendants' motions for pre-authorization discovery and Defendant Young's Application to Review the Prosecution's Submission are hereby DENIED.

It is so ORDERED.